ISAAC L. HILL V. JOHN THOMAS TOWNSEND, ADMINISTRATOR.

A plaintiff, who has made affidavit of the loss, &c., of an original instrument, under which he claims, is not bound to receive a paper tendered him by the defendant, as such original, but may introduce parol evidence of its execution and contents.

When the plaintiff has closed his case, the defendant may, in order to rebut the parol evidence introduced by the plaintiff, offer the instrument, and prove that it is the identical one under which the plaintiff claims, without thereby admitting its execution.

And the plaintiff has not the right to read it in evidence, as an instrument, the execution of which is admitted by the defendant.

Where it is alleged, that an intestate died in 1838; that administration had been pending upon his estate from that time until a short time before the commencement of the suit in 1850, when the defendant, who had been appointed administrator *de bonis non*, in 1847, set up an adverse title to the property, and was selling and disposing of it as his own; that the sureties on his bond were insolvent; and that the debts of the estate had all been paid; a suit may be maintained by the assignee of the heirs, in the District Court, against the defendant, for negroes in his possession, belonging to the estate, although it be not alleged that the administration of the estate has been settled in the Probate Court.

When a citizen of this state dies intestate, and his heirs are *femes covert*, and citizens of a state where the common law upon the subject of marital rights is in force, his personal property vests immediately in the heirs, and passes, by the law of their domicil, to their husbands, subject to such limitations as it may prescribe, in reference to *choses in action* not reduced into possession.

An assignment of the wife's *choses in action*, by the husband, during the marriage, for a valuable consideration, by the common law, passes the title to the assignee, and bars her right of survivorship.

A defendant claiming to hold as administrator, cannot rely upon the statute of limitations, against the assignee of the heirs, though the plaintiff has alleged that the defendant, a short time before the commencement of the suit, set up an adverse claim to the property; and a former administrator pleaded, in a suit brought against him, but dismissed for want of security for costs, that the plaintiff was not the assignee, and that those under whom he claimed, were not heirs.

APPEAL from Fayette. Tried below before the Hon. Robert I. Townes.

This suit was commenced on the 22d October, 1850, by Ste-

phen Townsend, the appellee's intestate, against Isaac L. Hill, the appellant, to recover certain negroes which he claimed to be entitled to, as assignee of the heirs of Benjamin Thomas, deceased.

The allegations in the plaintiff's petition, and the various amendments thereto, so far as it is necessary to state them, for the proper understanding of the case, were, substantially, that Benjamin Thomas, a citizen of Texas, died intestate, in 1838, possessed, together with other property, of certain slaves, who, with their increase, at the time the suit was brought, amounted in number, to eighteen; that his only heirs were his two sisters, Matilda Gill, the wife of John B. Gill, and Nancy Egerton, the wife of Gilbert G. Egerton, who were citizens of the state of North Carolina, where the common law, with reference to marital rights, was in force; whereby all the personal property belonging to the estate of the said Thomas, became vested in the said John B. Gill and Gilbert G. Egerton, who, it was alleged by the plaintiff, gave to Joseph J. Little, on the 4th of March, 1841, a power of attorney, to sell the said property; which power of attorney, they charged, was lost, and could not be found. The said Little, it was further stated, came to Texas, and made a compromise with Benjamin R. Thomas, who claimed the property, as the heir of Benjamin Thomas, deceased, and who had been appointed administrator on his estate, by the Probate Court of Austin county, in the year 1838; that the said Benjamin R. Thomas resigned the administration, and Little procured one Armistead to be appointed administrator; that Little had, subsequently, on the 11th of January, 1842, under the said power of attorney, sold all of the negroes belonging to the said estate, to Phineas R. Oliver; and on the 14th of October, 1850, Oliver sold them, for a valuable consideration, to the plaintiff, Stephen Townsend. It seems that, subsequently to the appointment of Armistead as administrator, one Grayson became the administrator on the estate of the said Thomas, and so continued until 1847, when the defendant, Hill, was appointed administrator *de bonis non*, by the County Court of Austin County; he

gave bond, and returned an inventory of all the said negroes, as the property of the said estate; but the plaintiff alleged, that the sureties on his bond were insolvent; and that, a short time before the commencement of the suit, he had set up an adverse claim to the property, and had sold all of the negroes belonging to the estate, except the two sued for.

The defendant excepted to the petition, for want of jurisdiction in the court, and answered, denying title in the plaintiffs; pleaded title in himself; the statute of limitations; and that if he held possession of the said negroes, he held them as the administrator of the estate of the said Thomas, deceased; that he had been appointed administrator by the County Court of Austin county, in 1847, and was still administrator of the same.

The plaintiff made affidavit of the loss of the original power of attorney to Little, under which he claimed, and upon the trial, he offered parol testimony for the purpose of proving the execution of the said power and its contents; to which the defendant objected, and tendered an instrument to the plaintiff, as the original of the alleged power of attorney, which had been some time previously filed among the papers of the cause, attached to the depositions of Munger and Portis, witnesses on the part of the defendant, but also cross-examined by the plaintiff. The plaintiff declined to receive the instrument so tendered him, as the original power of attorney under which he claimed; and the court overruled the defendant's objection, and permitted the parol testimony offered, to go to the jury; to which the defendant excepted.

The defendant also excepted to the ruling of the court, as to the matter disclosed in the following bill of exception, No. 5, to wit: "Be it remembered, that upon the trial of this cause, after the plaintiff had closed his testimony, the defendant, by his attorneys, offered to read the instrument, purporting to be a power of attorney from Gill and Egerton to Little, and to identify the same as the only instrument, under which said Little ever claimed any authority, as the agent of heirs of the said Benjamin Thomas, deceased, by reading the deposition of Munger and Portis; and said

defendant offered to read said instrument for the following purpose, and with the following reservation, to wit, the defendant denied the execution of the instrument by Gill and Egerton, but offered to read it to the court and jury. 1st. To show that the instrument, under which Joseph J. Little claimed to act, was not properly probated or authenticated, to entitle the plaintiff to prove its contents, without first having proved its execution. 2d. To show the contents of the paper, which Little claimed to act under, in order to rebut the evidence, which the court had allowed the plaintiff to give, of its contents. The attorneys for the plaintiff objected to its being read for said purposes; and the court enquired of the attorneys, who had brought said instrument of writing into court, and the attorneys replied, that it was attached to the deposition of N. H. Munger and D. Y. Portis, taken by the defendant, and filed in this case as a part of the answers of said witnesses. The court then said, that the defendant, in thus bringing said instrument into court, and offering it as the identical instrument under which Little claimed to act, admitted its execution ; and if the plaintiff refused to accept and read the same to the jury, the defendant might read it as evidence, and the court would instruct the jury, that if they believed from the testimony, that said instrument was the only authority under which Little acted, in making the sale to Oliver, they must find a verdict for the defendant. Whereupon the attorneys for the plaintiff asked to be allowed to read the same in evidence, as an instrument, the execution of which the defendant had admitted. Upon which the defendant's attorneys stated, that they were surprised by the ruling of the court, and refused to deliver said instrument of writing to the plaintiff, and offered to withdraw it entirely ; but the court ruled that the defendant by his own acts, had both admitted the execution of said instrument, and placed it within the power of the plaintiff, and compelled the attorneys of the defendant to deliver the same to the plaintiff's attorneys, and allowed them to read the same as a paper, the execution of which the defendant

admitted, and instructed the jury so to regard it; to all which, the defendant excepted."

It also appeared, that in 1844, the said Oliver brought suit against Grayson, as administrator, for the recovery of the said negroes, which he claimed under the sale to him by Little. The defendant Grayson, answered by an exception; and that the wives of Gill and Egerton were not the heirs of Thomas; and also denied that Gill and Egerton had conveyed the negroes sued for to the plaintiff. But no further action was had in the case, as it was dismissed for want of security for costs.

It is unnecessary to state the other facts presented by the record. There was a judgment and verdict for the plaintiff, from which the defendant appealed.

*John W. Harris*, and *Webb & Harcourt*, for the appellant.

*John A. & R. Green*, for the appellee.

BELL, J.—We have attentively considered the many questions presented in this case, but we do not propose to enter into an elaborate discussion of any of them; because our opinion will lead to a reversal of the judgment, and it is not probable, that many of the questions will present themselves upon another trial.

We are of opinion, that the court below erred in the ruling presented for our review, by the fifth bill of exceptions, in relation to the admission in evidence of the power of attorney, from Egerton and Gill to Joseph J. Little.

This cause was tried in the District Court, in November, 1853. In April, 1853, the power of attorney in question was filed in the court, attached to the depositions of the witnesses, Munger and Portis. The plaintiff claimed title to the slaves in controversy, through that power of attorney, and had alleged in his pleadings, that it was lost, and could not be found; and he took testimony to prove its execution and contents. On the trial, the defendant tendered to the plaintiff the instrument which had

been filed several months previously, as the instrument which the plaintiff declared, in his pleadings and affidavit, to be lost. The plaintiff declined to recognise it as the instrument through which he claimed, and proceeded to introduce parol proof of the execution and contents of the power of attorney, which he alleged had been executed by Egerton and Gill, to Little.

This, we think, was proper. The plaintiff was not bound to receive the instrument tendered by the defendant. But when the plaintiff had closed his testimony, the defendant might offer the instrument in court, and prove that it was the identical instrument under which Little acted, and the only instrument under which he acted, as the agent of Egerton and Gill, to rebut the parol proof already introduced by the plaintiff, of the contents of the power of attorney, from Egerton and Gill to Little. And this, we think, the defendant might do, without admitting the execution of the instrument which he produced, as the act of Egerton and Gill.

We think the court erred in ruling, that by the production of the instrument, the defendant admitted its execution, and in permitting the plaintiff then to read it in evidence, as an instrument, the execution of which was admitted by the defendant.

Upon the parol evidence offered by the plaintiff, of the execution and contents of the power of attorney, from Egerton and Gill to Little, it would have remained for the jury to have pronounced. But when the instrument, brought into court by the defendant, was read to the jury, the parol evidence of execution and contents of a lost instrument, was withdrawn from the jury; at least, such was the legal effect of the action of the court. But in point of fact, the great mass of parol testimony, in relation to the contents of the power of attorney, under which Little acted, was left to have its effect upon the minds of the jury, while the precise question of the execution of the instrument was determined by the ruling of the court. We think the judgment of the court below must be reversed, for this reason.

We are of opinion, that the court below did not err in taking

jurisdiction of the case, upon the facts alleged in the plaintiff's petition.

We are also of opinion, that the property in question, being inherited according to the laws of Texas, by the sisters of the deceased, Thomas, vested immediately in them; and becoming subject to the law of their domicil, passed to the husbands, John B. Gill and Gilbert G. Egerton, under such limitations as the law of their domicil prescribes, or recognises, in reference to *choses in action*, not reduced into possession.

We are of opinion, that the court below did not err in instructing the jury, that an assignment by the husband, of the wife's *chose in action*, during the marriage, for a valuable consideration, passes the title to the assignee, and bars the wife's right of survivorship. This is a question which has been much discussed, and upon which courts of high authority have differed. We have examined all the principal cases, and think that the doctrine announced in the instruction given by the court below, to the jury, is, in the language of Chancellor KENT, "understood to be the rule best sustained by authority." We have not the time, nor is it necessary, to review the many cases on this interesting subject. They will nearly all be found in the notes to Kent's Commentaries, vol. 2, pp. 121–124.

We are also of opinion, that the defendant in the court below did not show himself to be in a position to claim the protection of the statute of limitations. Upon another trial, the question of the proper construction of the power, from Egerton and Gill to Little, will remain; and whether or not, Little transcended his power, in the sale to Oliver. The judgment of the court below is reversed and the cause remanded.

Reversed and remanded.